# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MELVIN STEVENSON, JR.,

                    Plaintiff,

v.                                                    Case No. 21-CV-1072-JPS

ELITE STAFFING, INC.,

                    Defendant.                        **ORDER**

## 1.    INTRODUCTION

On November 18, 2021, Defendant Elite Staffing, Inc. ("Elite") moved to dismiss all of Plaintiff Melvin Stevenson, Jr.'s ("Stevenson") claims, except those brought under Title VII of the Civil Rights Act of 1964 ("Title VII"). ECF No. 22. On May 3, 2022, the Court entered an order granting in part and denying in part Elite's partial motion to dismiss. ECF No. 47. Specifically, the Court dismissed Stevenson's claims for defamation, employer negligence, emotional distress, loss of wages, and labor abuse crimes with prejudice. *Id.* The Court dismissed Stevenson's fraud claim without prejudice. *Id.* The Court denied the motion as to Stevenson's breach of contract and misclassification claims. *Id.* Thus, the action proceeded to discovery on Stevenson's claims for breach of contract and misclassification, as well as on Stevenson's claims for racial discrimination, unlawful retaliation, and racial harassment (otherwise known as hostile work environment) in violation of Title VII.

The action now comes before the Court on Stevenson's July 7, 2022 motion for leave to amend his complaint, ECF No. 53, and Elite's July 15, 2022 motion for summary judgment, ECF No. 56. Elite moves for summary

judgment on all of Stevenson's remaining claims. ECF No. 56. Both motions are fully briefed. ECF Nos. 53, 60, 64 (motion for leave to amend); ECF Nos. 57, 65, 66 (motion for summary judgment). For the reasons stated herein, the Court will deny Stevenson's motion for leave to amend his complaint and will grant Elite's motion for summary judgment.

## 2. STEVENSON'S MOTION FOR LEAVE TO AMEND HIS COMPLAINT

On July 7, 2022, eight days before the July 15, 2022 summary judgment deadline, Stevenson filed a motion for leave to amend his complaint. ECF No. 53. Before turning to the timing of the motion as compared to the case's procedural posture, the Court makes a few observations. On September 22, 2021, after removing this case from Milwaukee County Circuit Court, Elite filed a partial motion to dismiss. ECF No. 5. The Court denied the motion without prejudice on September 29, 2021 and ordered the parties to meet and confer. ECF No. 11. As to that meet-and-confer, the Court explicitly ordered that "[t]he defendant should take care to explain the reasons why it intends to move to dismiss the complaint, *and the plaintiff should strongly consider filing an amended complaint.*" *Id.* at 2 (emphasis added).

After they met and conferred, the parties filed status reports, wherein they reported that Stevenson decided that "he will not amend his Complaint because he did research and believes it is accurate." ECF No. 14 at 1; *see also* ECF No. 17. Elite accordingly requested leave to refile its partial motion to dismiss. *Id.* Still, however, the Court recognized that, because Stevenson appears pro se, he "benefit[s] from various procedural protections not otherwise afforded to the attorney-represented litigant." *Jones v. Phipps*, 39 F.3d 159, 163 (7th Cir. 1994). ECF No. 18 at 2.

Consequently, the Court denied Elite's request and ordered the parties to meet and confer a second time, giving Stevenson yet another bite at the apple and opportunity to amend his complaint prior to motion practice. *Id.*

Thereafter, Elite filed a second status report, representing that the parties were again at an impasse. ECF Nos. 19. Elite again requested leave to file its partial motion to dismiss, and refiled the motion on November 18, 2021. ECF Nos. 19, 22. An onslaught of filings and motions followed, ECF Nos. 25, 26, 29, 32–35, 37–41, 43, 45, 46, and, on May 3, 2022, the Court issued its order on Elite's partial motion to dismiss. ECF No. 47. Therein, the Court described Stevenson's failure to follow the Court's meet and confer orders, and held that, "because the Court has already given Stevenson *two opportunities* to amend his Complaint, the Court will address the motion for partial dismissal." *Id.* (emphasis added). To be sure, in the same order, the Court noted that it denied Stevenson's fraud claim without prejudice for failure to plead the requisite particularity, subject to a motion for leave to amend his complaint to do so. *Id.* at 10.

Two months passed before Stevenson filed that motion, which is now before the Court alongside Elite's motion for summary judgment. Stevenson has consistently proven himself to be an active litigant; there is no reason other than tardiness, and perhaps an eleventh-hour desire to avoid summary judgment, to explain his delay. The Court discerns the latter from the fact that Stevenson filed his motion for leave to amend his complaint two days after the Court's order, discussed further below, granting Elite's motion for leave to file its statement of facts in support of its anticipated summary judgment motion. ECF No. 52.

In his motion for leave to amend his complaint, Stevenson seeks leave to (1) add his Equal Employment Opportunity Commission

("EEOC") rebuttal statement to the complaint, (2) replead his fraud claim, and (3) add a claim for civil assault. ECF No. 53. The proposed amended complaint adds additional detail as well to Stevenson's misclassification and breach of contract claims, including allegations regarding tortious interference with contract. ECF No. 53-1 at 2–4.

As to Stevenson's first proposed amendment, the EEOC rebuttal statement was attached to his original complaint, and the Court explicitly considered it in its order on Elite's partial motion to dismiss. ECF No. 47 at 5 n.1 ("The Court considers the EEOC 'rebuttal statement' attached to Stevenson's Complaint as part of the Complaint."). Regarding the claim for civil assault, which arises under state law, Stevenson does not provide enough factual detail for the Court to discern whether it may exercise supplemental jurisdiction over that claim. 28 U.S.C.A. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."). Turning to the fraud claim, Stevenson's opportunity to seek leave to replead that claim came and went. The same is true for any additional detail Stevenson now seeks to add regarding his misclassification and contract claims, including any purported claim for tortious interference with contract.[1]

---

[1] The Court notes parenthetically that if tortious interference with contract is meant to be a standalone claim, Stevenson does not plead the requisite elements in his proposed amended complaint. Tortious interference with contract occurs when a person "intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract." *Wausau Med. Ctr., S.C. v. Asplund*, 514 N.W.2d 34, 44 (Wis. Ct. App. 1994). Stevenson does not identify any third party

Stevenson's two-month delay following the Court's order on Elite's partial motion to dismiss, notwithstanding the Court's *two* prior orders allowing him a chance to amend his complaint, culminating in a motion filed on the eve of the summary judgment deadline, is dilatory and unduly prejudices Elite. "With a late motion for leave to amend, the underlying concern is the prejudice to the defendant rather than simple passage of time." *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 832 (7th Cir. 2016). As the Court warned Stevenson in its August 3, 2022 order denying Stevenson's motion to strike Elite's brief in opposition to the motion for leave, leave to amend a complaint is inappropriate where there is "undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment." *Villa v. City of Chicago*, 924 F.2d 629, 632 (7th Cir. 1991).

As the Court's summary of the record demonstrates, nearly all these factors are present here. *See also Thomas v. Mashak*, 743 F. App'x 702, 703–04 (7th Cir. 2018) ("Thomas's motion was untimely: not until one week before the deadline for dispositive motions did he move to amend his complaint."); *Johnson v. Cypress Hill*, 641 F.3d 867, 871–73 (7th Cir. 2011) ("Johnson's request to change his claims on the eve of summary judgment is exactly the sort of switcheroo we have counseled against."); *Feldman v. Am. Mem'l Life Ins. Co.*, 196 F.3d 783, 793 (7th Cir. 1999) ("The prejudice to the new defendant and the delay to Prairie States, well after the close of

---

other than General Mills. If General Mills is the intended third party, Stevenson does not plead that he had a contract with General Mills.

discovery and on the eve of summary judgment proceedings, justified the district court's denial of [Plaintiff's Motion to Amend its Complaint].").

Consequently, the Court will deny Stevenson's motion for leave to amend his complaint. At this juncture, the Court will further dismiss the fraud claim with prejudice. *See In re Olde Prairie Block Owner, LLC*, 442 B.R. 675, 679 (Bankr. N.D. Ill. 2011) (particularly where the plaintiff had the opportunity to "further litigate the case," the decision to "[c]hang[e] the terms of a dismissal order from without prejudice to with prejudice is within the district court's authority. Such a sanction is available to trial courts to ensure compliance with court orders and rules, to deter parties from proceeding in a dilatory fashion, and to promote the orderly and efficient administration of justice.").

3.    **ELITE'S MOTION FOR SUMMARY JUDGMENT**

    3.1    **Legal Standard**

Under Federal Rule of Civil Procedure 56, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A "genuine" dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court construes all facts and reasonable inferences in a light most favorable to the nonmovant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

### 3.2 The Parties' Factual Submissions

The Court's December 13, 2021 trial scheduling order instructs the parties that "[f]or summary judgment motions, the parties must meet and confer at least 30 days prior to filing the motion" in order to create one joint, agreed-upon statement of facts to submit with the motion. ECF No. 31 at 2. The order accordingly informs the parties that they must omit a facts section from their briefing because "the Court will only consider the single, agreed-upon statement of facts." *Id.* The Court's order further grants the parties leave to each file a one-page set of itemized disputed facts, but cautions them that "if any of the disputed facts are material, then summary judgment is not appropriate." *Id.*

On June 20, 2022, Elite filed a Civil Local Rule 7(h) motion for leave to file a proposed statement of facts that it drafted, with pinpoint citations only to Stevenson's complaint and Stevenson's deposition transcript, because Stevenson had refused multiple times to meet and confer on a joint statement of facts, thus flouting the Court's order. ECF No. 49. When Stevenson did not respond to the 7(h) motion, the Court granted it, particularly in light of the fact that the statement of facts as drafted by Elite cites only to Stevenson's own complaint and deposition transcript. ECF No. 52 at 3. The Court additionally held that, in line with the trial scheduling order, the statement of facts as drafted by Elite would be "the only statement of facts considered by the Court on review of the anticipated summary judgment motion." *Id.*

Thereafter, briefing proceeded and concluded on Elite's motion for summary judgment. ECF Nos. 57, 65, 66. On September 16, 2022, however, two weeks after Elite had filed its reply brief, Stevenson filed a document titled "Declaration in support of Plaintiff opposition of Defendant's

summary judgment." ECF No. 67. Attached to the declaration, Stevenson submits a purported "Joint Statement of Material Facts" that is signed only by Stevenson and that is different from the one filed by Elite. ECF No. 67-1. Stevenson's declaration is, in substance, a sur-reply. The sur-reply "is not authorized by the Local or Federal rules, was not authorized by the Court, and was not accompanied by a motion requesting leave to file." *Brownmark Films, LLC v. Comedy Partners*, No. 10-CV-1013-JPS, 2011 WL 4496779, at *3 (E.D. Wis. Sept. 27, 2011). Therefore, the Court will not consider it. Moreover, the "joint" statement of facts that Stevenson attaches to the sur-reply—notwithstanding that it runs afoul of the Court's summary judgment procedures as set forth in its trial scheduling order—asserts a variety of broad factual allegations without any pinpoint citations to the record or supporting evidence. *Cf. Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004) ("[S]elf-serving statements in affidavits *without factual support in the record* carry no weight on summary judgment.") (emphasis in original).

Stevenson has repeatedly violated the Court's orders and this District's local rules. Consequently, the Court stands by its order granting Elite's Civil Local Rule 7(h) motion for leave to file its statement of facts. ECF No. 52. For purposes of Elite's motion for summary judgment, the Court will adopt those of Elite's proffered facts that are relevant and material (which facts, again, cite only to Stevenson's complaint and deposition transcript) with minor, non-substantive edits. ECF Nos. 50-2, 58-1; *see also McCurry v. Kenco Logs. Servs., LLC*, 942 F.3d 783, 787 n.2 (7th Cir. 2019) (courts may "strictly enforce local summary-judgment rules" even against pro se litigants); *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1020 (N.D. Ill. 2018) (disregarding portions of plaintiff's proffered facts on summary

judgment for failure to comply with local rule). Internal citations therein are omitted for brevity.

### 3.3 Relevant Facts

Stevenson resides in Milwaukee, Wisconsin. Elite is a staffing company that has a branch office in Milwaukee. Elite assigns its employees to its clients to work. Elite hired Stevenson on or about March 11, 2020, and assigned him to work at Elite's client, General Mills, Inc. ("General Mills"), in Milwaukee. While General Mills controlled Stevenson's hours and workweek, Stevenson was an employee of Elite. Stevenson did general labor in a variety of roles while on assignment at General Mills. When Stevenson was employed, Elite paid him his wages, and Stevenson received a W-2 form at the end of the year from Elite.

At the time of Stevenson's employment with Elite, roughly 95% of the 200 employees working at the General Mills site were African-American. Stevenson initially worked on third shift. Stevenson alleges that, during his time on third shift, an African-American employee named Andre Frierson ("Frierson") cursed at him and called him a racial slur. Stevenson believes that Frierson engaged in this conduct towards Stevenson because Frierson was on drugs, was unstable, and was afraid that Stevenson was going to take Frierson's job. Frierson was not the third shift supervisor; that individual was Roberto Alvarado.

Stevenson reported his concerns about Frierson to Elite's Milwaukee branch office on or about November 16, 2020 and submitted a written statement. Stevenson did this after he had been taken off a "corrugate" position that he liked. When he reported his concerns, Stevenson did not ask Elite to fire Frierson; Stevenson reported Frierson because he wanted the corrugate position back. In response to Stevenson's report, Elite

suspended Frierson and gave him a final warning for addressing an employee in an unprofessional manner.

In January 2021,[2] Stevenson made an oral report to Elite that Frierson was still nit-picking him and asked to be moved from third shift to second shift. Elite granted Stevenson's request and moved Stevenson to second shift at General Mills. Elite eventually discharged Frierson because of the way he treated other employees.

The second shift supervisor was an African-American named Shantella Carter ("Carter"). In contrast to Frierson, Carter did not use profanity. Carter was known to have discharged a number of employees. During Stevenson's time on second shift, Carter would make statements to Stevenson such as, "Melvin, you always in here, what are you doing. Hurry up. Melvin, I'm always seeing you." When shifts changed at General Mills, the employees from second and third shift would talk. Frierson and Carter talked with each other and had contact during the shift change. Stevenson did not tell Carter that he had reported his concerns about Frierson to Elite. Stevenson believes that because Carter had contact with Frierson during the shift change, however, Carter knew that Stevenson had complained about Frierson.

On February 10, 2021, Carter assigned Stevenson a spot on a line on the production floor. Carter had instructed employees who had been assigned a spot on a line on the production floor that they should not stay in the lunchroom. After giving this instruction, Carter saw Stevenson in the lunchroom; he was throwing food he had been eating into the garbage.

_____

[2]Elite's statement of facts represents that this incident occurred in January 2019. However, the Court discerns from a review of the record and the statement of facts as a whole that the incident actually occurred in January 2021.

Carter told Stevenson to stop what he was doing and go home. Stevenson asked Carter if he could discuss the issue with her in her office; Carter told Stevenson, "No, Melvin you cannot discuss with me in my office, you can go home." Stevenson went to talk to another manager about what had happened; the other manager told him to go on the floor. Stevenson thereafter tried to enter the production floor, but Carter put her arms out and blocked the door. Carter said that Stevenson had to go home, and she decided to make him a "DNR" or "do not return" to General Mills.

Carter made Stevenson a DNR because he had engaged in insubordination by not following her instructions. Stevenson believes that Carter's action was unlawful because she had instructed him to stop eating before the shift started. Stevenson further believes that Carter was motivated to pick on him and decided to make him a DNR because she was a "front" for what he claims was an "illegal operation" of misclassifying employees. Stevenson believes that when an employer misclassifies an employee, the employer receives grants and loans.

After Carter made him a DNR, Stevenson went to Elite's Milwaukee branch office and submitted a written statement about Carter. Elite's staff told Stevenson that his assignment at General Mills had ended because of insubordination; specifically, that Carter gave him an order and he didn't listen. Stevenson was not discharged from Elite when his assignment at General Mills ended.

When it came to scheduling, Stevenson was not treated differently than other employees. At General Mills, they put employees' names up on a wall to indicate whether they were scheduled to work. If an employee's name was not on the list, they would have to call in to determine when they could work next. For example, on a given day, 80 Elite employees could

show up to work at General Mills, but only 40 of them would work that day. Only about three employees per shift received the hours they were originally promised. Stevenson believes that there was an agreement when he was hired that he would work seven days one week and then five days the next. Some weeks, however, Stevenson worked less than that. When General Mills did not need employees, it would tell people to go home. Stevenson believes that every time General Mills told people to go home, there was a breach of contract.

### 3.4 Analysis

#### 3.4.1 Misclassification

At the summary judgment stage, the Court makes quick work of Stevenson's misclassification claim. In its order on Elite's partial motion to dismiss, the Court first observed that a generic claim of "misclassification" in the abstract fails to provide Elite with fair notice of the claim brought against it. ECF No. 47 at 8. However, construing Stevenson's complaint liberally, which it was required to do,[3] the Court allowed Stevenson to proceed to discovery on a claim ostensibly under Wis. Stat. § 109.03(5): that Elite incorrectly misclassified him as an independent contractor, thereby depriving him of certain benefits, including full wages due. *Id.* at 9. The Court further noted that "[w]hether Stevenson was, in fact, misclassified" incorrectly as an independent contractor is not at issue at the pleadings stage and would be sorted out through discovery. *Id.* at 10.

Discovery proceeded, and it has revealed that Stevenson was an employee of Elite; indeed, Stevenson admitted as much at his deposition,

---

[3]*See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that courts should evaluate pro se pleadings with an eye toward substantial justice).

ECF No. 58-1 at 6, and in filings to the Court, ECF No. 53 at 1. Stevenson also testified at his deposition that he received his wages from Elite, as well as a W-2 form at year-end from Elite. ECF No. 58-1 at 7.[4] Because Stevenson was an employee of Elite (and he admits the same), his claim that Elite incorrectly misclassified him as an independent contractor fails. The Court will grant Elite's motion for summary judgment on Stevenson's misclassification claim.

### 3.4.2   Breach of Contract

In its order on Elite's partial motion to dismiss, the Court analyzed Stevenson's contractual claim through the lens of both breach of contract and wrongful discharge, again in an attempt to construe Stevenson's pleadings "with an eye towards substantial justice." *Erickson*, 551 U.S. at 94; ECF No. 47 at 7–8; *see also Mackenzie v. Miller Brewing Co.*, 608 N.W.2d 331, 338 (Wis. Ct. App. 2000) (wrongful discharge and breach of contract both arise under contract law). Under Wisconsin law, the elements a plaintiff must allege to successfully plead a breach of contract claim are: "(1) a valid contract; (2) a violation or breach of the terms of that contract; and (3) damages." *Schuetta v. Aurora Nat. Life Assur. Co.*, 27 F. Supp. 3d 949, 957 (E.D. Wis. 2014).

To plead a wrongful discharge claim under Wisconsin law in a breach of contract case, a plaintiff must allege Wisconsin's narrow public

---

[4]Stevenson is litigating a separate case against General Mills before District Court Judge Brett H. Ludwig. *Stevenson v. General Mills, Inc.*, 21-CV-1052-BHL (E.D. Wis. Sept. 10, 2021). Stevenson apparently testified in his deposition in the instant action that his claim is that he was misclassified as an independent contractor by General Mills, not by Elite. ECF No. 58-1 at 7. Neither that claim nor General Mills is before this branch of the Court; therefore, this statement is of no consequence to the Court's disposition of Stevenson's misclassification claim against Elite.

Case 2:21-cv-01072-JPS   Filed 09/21/22   Page 13 of 23   Document 71

policy exception to the employment at-will doctrine: that he was terminated for refusing a command to violate the spirit or letter of public policy or the law, or that he was terminated for complying with the spirit or letter of public policy or the law. *Tatge v. Chambers & Owen, Inc.*, 579 N.W.2d 217, 222–23 (Wis. 1998) (citing *Brockmeyer v. Dun & Bradstreet*, 335 N.W.2d 834 (Wis. 1983); *Bushko v. Miller Brewing Co.*, 396 N.W.2d 167 (Wis. 1986); *Hausman v. St. Croix Care Ctr.*, 571 N.W.2d 393 (Wis. 1997)). At the pleadings stage, the Court found that Stevenson had alleged sufficient facts to proceed to discovery on both theories. ECF No. 47 at 7–8.

As the record now stands, however, the facts uncovered during discovery, and particularly during Stevenson's deposition, reveal that both theories of contract law fail. During his deposition, Stevenson testified that the contract to which his complaint refers is an alleged agreement with Elite, formulated when he was hired, that he would be able to work a pattern of seven days one week and five days the next week. ECF No. 58-1 at 6. Beyond that otherwise unsupported statement, however, Stevenson is unable to identify any consideration in exchange for this alleged promise (and, therefore, he is unable to prove a valid contract); nor is he able to explain the duration of the contract.[5] *Runzheimer Int'l, Ltd. v. Friedlen*, 862

---

[5]In his opposition brief, Stevenson now contends that the alleged contract was for one year. However, Stevenson does not cite to any evidence in the record to support this assertion. "[A] party opposing summary judgment must do more than simply show that there is some metaphysical doubt as to the material facts . . . . A party must produce specific facts showing that there remains a genuine issue for trial and evidence significantly probative as to any material fact claimed to be disputed." *Sampson Invs. v. Sampson*, 111 F. Supp. 2d 1064, 1069 (E.D. Wis. 2000) (citations omitted).

Moreover, this proffered fact is not included in the statement of facts submitted by Elite, which the Court previously held is the only statement of facts it will consider upon review of the instant summary judgment motion, given

N.W.2d 879, 885 (Wis. 2015) ("The elements of an enforceable contract are offer, acceptance, and consideration."); *Holloway v. K-Mart Corp.*, 334 N.W.2d 570, 572 (Wis. Ct. App. 1983) ("Employment contracts which specify no term of duration and which fix compensation at a certain amount per day, week or month are terminable at the will of either party. Discharge of an employee hired under such a contract does not constitute a breach of the contract justifying the recovery of damages.").

Stevenson further testified that he often worked less than the alleged contracted-for schedule of seven days one week and five days the next week, meaning he would have breached the contract as well. ECF No. 58-1 at 6; *see also Entzminger v. Ford Motor Co.*, 177 N.W.2d 899, 902 (1970) ("[A] material breach by one party to a contract excuses subsequent performance by the other party."). Finally, Stevenson testified that all employees staffed to work at General Mills were scheduled to work in the same manner as Stevenson, which belies the terms of his alleged contract. *Id.* at 2–3. Specifically, their names were placed on a wall on any given day and chosen to work from there. *Id.* at 2. Even if 80 employees showed up one day, only 40 could be chosen to work, depending on the day. *Id.* Stevenson accepted this arrangement by maintaining his employment with Elite in accordance with this practice.

These facts are fatal to Stevenson's breach of contract claim, as Stevenson has failed to establish a valid contract. Even if he had, he is unable to demonstrate that Elite breached that contract and/or that any breach would not have been excused. The Court will not accept Stevenson's

---

Stevenson's failure to follow the Court's prior orders. *See, e.g.*, *Rivera*, 319 F. Supp. 3d at 1020.

invitation to draft a valid contract for him and Elite. ECF No. 65 at 2 ("Plaintiff is asking the court to draft a contract by supplying the terms of the offered agreement. It would be proper to do so."). Contrary to Plaintiff's assertions, courts "will not []write a contract to read the way a party wishes it had been drafted." *Hernandez v. BNG Mgmt. Ltd. P'ship*, 815 N.W.2d 725, 729 (Wis. Ct. App. 2012).

To the extent Stevenson's contract claim is one of wrongful discharge, nothing in the record post-discovery has revealed that Stevenson's termination was due to violating or obeying the spirit or letter of a law or public policy. Stevenson certainly may have been following the spirit and letter of Title VII by reporting Frierson's conduct to Elite's Milwaukee office branch, but the record reveals that Stevenson did not believe that Frierson mistreated him due to racially discriminatory animus, but rather because Frierson was on drugs, unstable, and jealous of Stevenson. ECF No. 58-1 at 2. Moreover, Stevenson testified that he made the report because he wanted his corrugate position back, not because he honestly believed he was opposing illegal racial discrimination; thus, Title VII is not implicated. *Id.* at 3; *see also infra* Sections 3.4.3 through 3.4.5.

The record further reveals that Stevenson's termination was due to his insubordination towards Carter, not in retaliation for his complaints against Frierson. ECF No. 58-1 at 4; *see also infra* Sections 3.4.3 through 3.4.5. Parenthetically, even if Stevenson stated a valid Title VII claim, the statutory remedial scheme underlying Title VII would bar the common law wrongful discharge claim. *Davenport v. Ind. Masonic Home Found. Inc.*, No. IP00-1047-C-H/G, 2004 WL 2278754, at *4 (S.D. Ind. Sept. 30, 2004). After proceeding through discovery, Stevenson has been unable to identify any laws or public policies other than Title VII that he was either commanded

to violate or that he obeyed, in either case in a manner causing his termination. Consequently, the Court will grant Elite's motion for summary judgment on Stevenson's contract claims, whether breach of contract or wrongful discharge.

### 3.4.3 Title VII – Racial Harassment (Hostile Work Environment)

To survive summary judgment on a claim of racial harassment amounting to a hostile work environment in violation of Title VII, a plaintiff must "present evidence demonstrating (1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018) (internal citations omitted). Courts "consider the totality of circumstances, examining factors such as: the frequency of improper conduct, its severity, whether it is physically threatening or humiliating (as opposed to a mere offensive utterance), and whether it unreasonably interferes with the employee's work performance." *Id.* (internal citations omitted).

Here, Stevenson's claim fails primarily on the second element. First, both of Stevenson's alleged harassers—Frierson and Carter—are members of the same protected class as Stevenson. *Southall v. AVI Food Sys., Inc.*, 21-CV-39, 2022 WL 3579804, at *6 (N.D. Ind. July 27, 2022) ("[T]here can be no compelling inference of discrimination when the decision-maker is in the same protected category as the plaintiff."); ECF No. 58-1 at 2, 4. Second, Stevenson testified that he believes Frierson used profanity and a racial slur towards Stevenson because Frierson was on drugs, unstable, and was afraid that Stevenson would take Frierson's job—not because of Stevenson's race.

ECF No. 58-1 at 2; *see also Southall*, 2022 WL 3579804, at *6 (holding that "no reasonable juror could conclude that AVI terminated Southall based on his race" in part because "when Southall was asked at his deposition what made him think Foster terminated him because of his race, he offered no evidence, answering: 'That is a good question. I mean, you know.'").

As to Carter, Stevenson does not allege any usage of racial slurs. Indeed, Stevenson testified that he believes Carter picked on him and made him a DNR because Carter was a front for an illegal employee misclassification operation, not because of Stevenson's race. *Id.* at 6; *see also Vore v. Ind. Bell Tel. Co.*, 32 F.3d 1161, 1162 (7th Cir. 1994) ("If the workplace is unsavory for any reason other than hostility generated on the basis of race, gender, ethnicity, or religion, no federal claim is implicated."). Finally, Stevenson testified that Carter was known to discharge employees, and that roughly 95% of the 200 employees working at the General Mills site, including under Carter, were African-American, which is the same protected class as Stevenson. ECF No. 58-1 at 2, 4.[6]

As to the third element concerning severity and pervasiveness, applying the totality of the circumstances analysis in this instance, "the one-time use of a racial epithet is not severe enough to trigger liability," particularly where the use is from a coworker, such as Frierson, rather than

---

[6]Stevenson disputes this fact in his opposition brief by alleging that 99% of management is white and, moreover, 90% of Elite's Black employees are subject to fraudulent employment contracts, in contrast to 5% of Elite's white employees. ECF No. 65 at 2. However, Stevenson does not support these assertions with any evidence or citations to the record, and violates the Court's orders by including extraneous facts in his briefing. *Sampson*, 111 F. Supp. 2d at 1069.

a supervisor.[7] *Paschall v. Tube Processing Corp.*, 28 F.4th 805, 815 (7th Cir. 2022). Of course, this is not a bright line rule; there are certainly situations where "the one-time use of the N-word can be found to be severe enough to warrant liability." *Id.*

However, turning to the fourth element, the Seventh Circuit has explicitly held that when a plaintiff subjected to a one-time racial epithet reports the perpetrator, and the employer takes effective remedial action in the form of "suspen[sion] . . . and [a] warn[ing] that if [the perpetrator] ever used racially inappropriate language again, []he would be terminated," there is no basis for employer liability. *Id.* That is precisely what took place here. In response to Stevenson's complaint about Frierson, Stevenson testified that Elite suspended Frierson and gave Frierson a final warning for addressing an employee in an unprofessional manner. ECF No. 58-1 at 3. Later, Elite terminated Frierson when his unprofessional conduct towards his coworkers continued. *Id.* Consequently, the Court will grant Elite's motion for summary judgment on Stevenson's claim for racial harassment amounting to hostile work environment under Title VII.

### 3.4.4   Title VII – Retaliation

To survive summary judgment on a Title VII retaliation claim, a plaintiff "must produce enough evidence for a reasonable jury to conclude that (1) [he] engaged in a statutorily protected activity; (2) the [defendant] took a materially adverse action against [him]; and (3) there existed a but-

---

[7]Stevenson disputes Elite's proffered fact that Frierson was not the third shift supervisor by alleging that Frierson had supervisory responsibilities. ECF No. 65 at 1–2. However, again, that extraneous assertion is unsupported. *Sampson*, 111 F. Supp. 2d at 1069.

for causal connection between the two." *Abrego*, 907 F.3d at 1014. As already explained, Stevenson testified that he did not believe that Frierson's treatment of him was motivated by racially discriminatory animus; nor was his report to Elite's Milwaukee office branch driven by a desire to combat racial discrimination in the workplace. Stevenson was instead driven by a desire to be reinstated to the more favorable corrugate position. *See Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 889 (7th Cir. 2004) (employee was unable to survive summary judgment on Title VII retaliation claim where "even [employee] himself did not believe that he had been sexually harassed, as is evidenced by his admissions that he did not believe [alleged perpetrator] was attracted to him and that the touch could have been inadvertent"). Thus, Stevenson did not engage in statutorily protected activity, as required under the first element.

Turning to the second element, Stevenson has been unable to proffer any evidence that Carter was aware of his complaints against Frierson when she made him a DNR. Consequently, he is unable to prove causation. Stevenson testified that he believes Frierson and Carter had occasion during the shift change to interact and that, during these interactions, Frierson told Carter that Stevenson complained about Frierson. ECF No. 58-1 at 5. Even assuming this statement was supported by evidence and sufficient to prove causation, Stevenson further testified that Carter was motivated to make him a DNR because she was a front for an illegal misclassification operation, not because she was encouraged by Frierson to retaliate against Stevenson. *Id.* at 6; *see also, e.g.*, *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1121–22 (7th Cir. 2009) ("Nagle has not shown that Chief Davis was aware that he filed a grievance in February 2005. This dooms his claim."); *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 464 (7th Cir. 2016) ("Boston does not cite

any evidence that demonstrates that her supervisor knew about the 2010 EEOC charge or decided to disqualify Boston based on that charge.").

Apart from Stevenson's contentions that the DNR was caused by an illegal misclassification operation, the record shows that there was a legitimate, non-retaliatory reason for Carter to make Stevenson a DNR: his failure to follow her instructions. *See Kahn v. U.S. Sec'y of Labor*, 64 F.3d 271, 279 (7th Cir. 1995), as modified (Sept. 7, 1995) ("We have consistently held that an employee's insubordination toward supervisors and coworkers, even when engaged in a protected activity, is justification for termination."). For all of these reasons, the Court will grant Elite's motion for summary judgment on Stevenson's Title VII retaliation claim.

### 3.4.5 Title VII – Racial Discrimination

To succeed on a Title VII racial discrimination claim, a plaintiff must produce evidence proving that "[1] he is a member of a class protected by the statute, [2] that he has been the subject of some form of adverse employment action (or that he has been subjected to a hostile work environment), and [3] that the employer took this adverse action on account of the plaintiff's membership in the protected class." *Abrego*, 907 F.3d at 1012. "The legal standard used to evaluate a discrimination claim is simply whether the evidence, considered as a whole, would permit a reasonable factfinder to conclude that the plaintiff's race. . . caused the discharge or other adverse employment action." *Id.* (internal citations omitted). This standard is a rearticulation of the *McDonnell Douglas* burden-shifting framework, which provides that, after a plaintiff has met his initial burden of establishing a prima facie case of racial discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the

plaintiff's termination. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973)).

Stevenson has not met his initial burden here. Moreover, the record shows that his DNR was based on a legitimate, nondiscriminatory reason: his insubordination. Simply put, without rehashing the same facts the Court has narrated several times already in this Order, Stevenson himself testified that he does not believe that either Frierson's or Carter's conduct towards him was due to his race. Even if he did, Elite has proffered Stevenson's insubordination towards a supervisor known to discharge employees as a legitimate, nondiscriminatory reason for the DNR. The Court will accordingly grant Elite's motion for summary judgment on Stevenson's Title VII racial discrimination claim.

## 4. CONCLUSION

For the reasons explained above, the Court denies Stevenson's motion to amend his complaint, ECF No. 53, and grants Elite's motion for summary judgment, ECF No. 56. Stevenson's remaining claims for breach of contract and misclassification, as well as for racial discrimination, unlawful retaliation, and racial harassment (or hostile work environment) in violation of Title VII, are dismissed with prejudice. Stevenson's fraud claim, previously dismissed without prejudice, ECF No. 47, is dismissed with prejudice. Therefore, this case will now be dismissed with prejudice in its entirety.

Accordingly,

**IT IS ORDERED** that Plaintiff Melvin Stevenson, Jr.'s motion for leave to amend his complaint, ECF No. 53, be and the same is hereby **DENIED**;

IT IS FURTHER ORDERED that Defendant Elite Staffing, Inc.'s motion for summary judgment, ECF No. 56, be and the same is hereby **GRANTED**;

IT IS FURTHER ORDERED that Plaintiff Melvin Stevenson, Jr.'s claims for breach of contract, misclassification, and fraud, as well as his claims for racial discrimination, unlawful retaliation, and racial harassment (or hostile work environment) in violation of Title VII of the Civil Rights Act of 1964, be and the same are hereby **DISMISSED with prejudice**; and

IT IS FURTHER ORDERED that this action be and the same is hereby **DISMISSED with prejudice.**

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 21st day of September, 2022.

BY THE COURT:

_____

J.P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.